# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

DAVID EASLEY,                          Case No. 1:14-cv-100
      Plaintiff,

                                       Dlott, J.
     vs                               Bowman, M.J.

DANA JUDD, et al.,                     **ORDER AND REPORT**
      Defendants.                   **AND RECOMMENDATION**

Plaintiff, a prisoner at the Southern Ohio Correctional Facility (SOCF) in Lucasville, Ohio, brings this *pro se* civil rights action under 42 U.S.C. § 1983 against numerous state officials and correctional employees.  By separate Order issued this date, plaintiff has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.  This matter is before the Court for a *sua sponte* review of the complaint to determine whether the complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief.  *See* Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b).

In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez,* 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 324 (1989)). To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if they are satisfied that the action is frivolous or malicious. *Id.*; *see*

*also* 28 U.S.C. §§ 1915(e)(2)(B)(i).  A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law.  *Neitzke v. Williams,* 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990).  An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist.  *Neitzke,* 490 U.S. at 327.  An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible."  *Denton,* 504 U.S. at 32; *Lawler,* 898 F.2d at 1199.  The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness.  *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted.  28 U.S.C. §§ 1915 (e)(2)(B)(ii).  A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).  By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470-71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  The Court must accept all well-

2

pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

Plaintiff brings this § 1983 prisoner civil rights action against the following defendants: Donald Morgan, SOCF's Warden; Cynthia Davis, SOCF's "Unit Manager Administrator"; Linnea Mahlman, SOCF's "Inst. Inspector"; Gary C. Mohr, the Director of the Ohio Department of Rehabilitation and Correction (ODRC); Dirk Prise, SOCF's "Mental Health Administrator"; Kathy Burns, ODRC "Chief Psychiatrist"; Gary Croft, ODRC "Chief Inspector"; John Kasich, the Governor of Ohio; Larry Greene, SOCF's "Warden Administrative Assistant"; Walter Sammons, a member of SOCF's Rules Infraction Board (RIB); Joanna Saul, "Correctional Inst. Inspection Committee Director"; Bertha Goodman, SOCF's "Mental Health Acting Supervisor"; Wanza Jackson, ODRC's "Religious Service Administrator"; Dana Judd, a member of ODRC's "Publication Screening Committee"; Dr. Fiasal Ahmed, a physician at SOCF; Dr. John Desmarais, ODRC "Medical Service Administrator"; Mona Parks, ODRC "Medical-Assist Chief Inspector"; Rosie Clagg, SOCF's "Health Care Administrator"; Anthony Cadogan, SOCF's "Deputy Warden Medical Service"; Sue Bigham, a "Public Inquiries Officer" at the Ohio State Medical Board; Chaplain York, a

member of SOCF's "Religious Dept."; Lt. Frazie, SOCF's "Mail Room Supervisor"; Sara

Warren, a clerk in SOCF's mail room; Ms. Lehman, a member of SOCF's "Mental Health

Treatment Team"; Dr. Ford, a mental health physician at SOCF; and SOCF correctional

officers Jason Azbel, Case Stone, Michael Jenkins, Distel, and Brian Felts.  (Doc. 1,

Complaint, pp. 4, 6).  In addition, plaintiff has named the following unidentified individuals as

defendants:  "ODRC Food Service Chief," and "SOCF Food Service Supervisor."  (*Id.*).

The complaint is rambling and often difficult to follow.  Construing the complaint

liberally, it appears that plaintiff is bringing a variety of claims challenging the conditions of

his confinement at SOCF.

First, plaintiff asserts a cause of action under the First and Fourteenth Amendments

against defendants Judd, Warren, Mahlman, Mohr, Croft, Lt. Frazie, Morgan and Cadogan.  In

that cause of action, plaintiff essentially challenges a "blanket ban" that SOCF's mail room has

placed "on music artist CDs such as Taylor Swift, Lil Wayne, Nicki Minaj and R. Kelly and

hundreds more" who "pose no security threat," as well as on Penthouse and Playboy magazines

and "erotic reading novels" that also "pose no threat to security."  (*Id.*, pp. 7-8).  Plaintiff

further alleges that the mail room withholds "any and all magazines including Self Help

Jailhouse Lawyer Handbook which is legal material and Prison Legal News in Local Control,

J1 and J2 segregation security control and Disciplinary Control."  (*Id.*, p. 8).  Plaintiff

specifically asserts that defendant Judd "keeps approving the ban [on] music" and that

defendant Warren "took over the mail room [and] has banned hundreds of hip hop CDs[,]

Penthouse magazines and erotic reading novels."  (*Id.*).  He states that Warren is a "moral

Christian crusader" who will not allow inmates to receive music or reading materials in the

mail that she does not "agree with or like."  (*Id.*).  Plaintiff further alleges that he has

complained to Lt. Frazie and submitted grievances to defendants Mahlman and Croft, but that "[t]hey all keep allowing this ban on music which was authorized by Dana Judd, Warden Donald Morgan, Sara Warren, Anthony Cadogan . . ., Gary Croft and Gary C. Mohr." (*Id.*)

Second, plaintiff claims that a change made in the provision of kosher meals at SOCF violates the First Amendment, the Fourteenth Amendment's Equal Protection Clause and the Religious Land Use and Institutionalized Persons Act (RLUIPA). (*Id.*, p. 9). Plaintiff brings the cause of action against defendants Jackson, Mohr, York, "ODRC Food Service Chief," and "SOCF Food Service Supervisor" stemming from cost-saving changes that plaintiff claims Mohr, Jackson and the "ODRC Food Service Chief" made with respect to the provision of kosher meals. (*Id.*, pp. 9, 10). He specifically alleges that meals no longer include a kosher breakfast with orange juice and that the new "cheap brand" of food provided at lunch and dinner "is so nasty and gross it[']s like some outdated military surplus food." (*Id.*, p. 9). Plaintiff further alleges: "[T]hey give you the same thing for lunch and dinner every other day we get nasty beef stew three days in a row over and over and over no cycle or variety." (*Id.*). Plaintiff claims that the change was made to retaliate against prisoners who requested kosher meals after the State responded to a recent lawsuit by Muslims by granting them kosher meals. (*Id.*). Plaintiff alleges that the defendants' purpose "was to make prisoners get off kosher . . . by refusing kosher breakfast and serve nasty vegetarian soy steak and beef stew over and over small amount and no veg[e]tables, fruit, des[s]ert and OJ." (*Id.*). He further states:

> Instead Food Service go to kitchen and scoop vegetables out main chow [line] into Styrofoam cups. We got to eat veg[e]tables out cups like dogs not sealed up food in brown bag soak and wet. I wrote complaint to Food Service then grievance . . . to Linnea Mahlman when my so called phony kosher meal arrived the bread was drench in water with hair, my veg[e]tables in cups not kosher. We was getting balance diet protein fish, veg[e]tables, des[s]ert all on one sealed up kosher entrée then they canceled breakfast and veg[e]tables etc. For breakfast they give us bread and peanut butter sandwich and cer[e]al in open Styrofoam

5

> cups.  Kosher is sealed up food from vendor rabbi approved.  Not unsealed food
> served in Styrofoam cups. . . .  I have a[n] approved religious accom[m]odation
> for kosher meals but I can not eat veg[e]tables non kosher entrée unsealed etc. and
> I starved until[] they forced me off.

(*Id.*, pp. 9-10).  Plaintiff alleges that he filed a complaint with the prison religious department

and filed a grievance with defendant Mahlman, as well as an appeal to defendant Croft, but that

they all upheld the new policy.  (*Id.*, p. 10).   He also alleges that he contacted defendant York,

who forwarded plaintiff's complaint to "Food Service."  (*Id.*, p. 22).  Plaintiff states that "Food

Service" responded by informing him that the ODRC had adopted a "new policy" in April

2013 concerning kosher meals, which it was required to follow.  (*Id.*).

Third, plaintiff brings a claim against defendants Mohr, Mahlman, Croft, Kasich, Stone

and Azbel challenging the alleged "use of high powered riot can mace used on wild bears to

spray on prisoners in situations that are not riots" and the denial of medical care to inmates

affected by the use of that mace.  (*Id.*, p. 11).  Plaintiff specifically avers that on January 1,

2013, the mace was sprayed by Stone on another inmate who had gotten into an argument with

Azbel and allegedly threw "urine and waste" on Azbel.  (*Id.*).  It appears that plaintiff is

claiming that the use of mace in that situation violated prison policy because the non-compliant

prisoner was in his cell and Stone failed to consider moving the by-stander inmates or to use

"diplomacy" by bringing in a "negotiator" and "SRT team" before spraying mace.  (*See id.*, pp.

12, 15).  Plaintiff states that "at least 33 prisoners started yelling can't breath[e] open window"

and that he and another by-stander inmate with asthma "yelled while choking on mace for

medical."  (*Id.*, pp. 11-12).  Plaintiff alleges that his eyes, skin and throat "burned" and that

although he and other inmates requested "medical treatment and shower to remove the mace,"

Stone and Azbel and "numerous unknown SRT guards refused to give us showers and . . .

refused to call medical."  (*Id.*, p. 12).  Plaintiff states that he and the other inmates then "had to

6

sleep in hot burning mace overnight." (*Id.*). Plaintiff filed a grievance, which was denied by

defendant Mahlman. (*Id.*, p. 14). He appealed to defendant Croft, who also denied plaintiff's

claim "and said seek medical attention immediately." (*Id.*). Plaintiff alleges:

> I sent sick call slip two times when I got no response to first sick call slip. Finally
> doctor refer[r]ed me to eye doctor. . . . As a result of mace burning eyes I was
> temporarily blinded and eye doctor prescribed glasses d[ue] to long term vision
> loss and blurred vision as a result of mace.

(*Id.*, pp. 14-15). Plaintiff claims that there is a "wide spread abuse" of mace throughout Ohio's

prisons. (*Id.*, pp. 12-13). He alleges that defendants Mohr, Croft, Mahlman and the Governor of

Ohio "are all aware of this abuse . . . d[ue] to multiple grievance[s] and complaint[s] . . . that led

to state wide inspection report about guards abusing mace in Ohio prisons" and yet "refuse to

take the mace." (*Id.*, p. 15).

Fourth, it appears that plaintiff is bringing a claim under the Eighth and Fourteenth

Amendments challenging his placement as a mentally ill inmate "in isolation for over two years

after multiple suicide attemp[t]s." (*Id.*, p. 16). Plaintiff claims that the "[d]efendants use

isolation, drugs and mace for staff conv[en]ience excessively as a substitute for [mental health]

treatment." (*Id.*). He alleges that his mental health is deteriorating as a result of his long-term

confinement in isolation. (*Id.*, p. 19). He states that he has "multiple cut marks" on his arm and

has "thoughts of suicide . . . to stop the mental anguish." (*Id.*). According to plaintiff, long-term

isolation induces suicide and mental illness, as demonstrated by a number of inmate suicides in

February 2012 "d[ue] to neglect and no treatment just isolation." (*Id.*, pp. 18-19). Plaintiff

appears to be bringing this cause of action against defendants Burns, Prise, Davis, Ford,

Mahlman, Croft, Saul and Kasich. He claims that the defendants are knowingly violating the

rights of mentally ill inmates, which were recognized and upheld in a prior court order and class

action, by continuing to keep mentally ill inmates locked up in isolation rather than placed in

treatment units.  (*See id.*, p. 19).  Plaintiff states:

> I expressed my issue of this to Dirk Prise, Doctor Chief Psychiatrist, Linnea
> Mahlman, Cynthia Davis and the Chief Inspector Gary Croft.  I even complained
> to Joanna Saul correctional institutional inspection committee they just say they
> already know about this. . . .  John Kasich is also aware via the multiple reports by
> legislative committee called Correctional Institutional Inspection Committee.  The
> director is Joanna Saul whom often made false reports on our inspector and
> grievance procedure recently.  Our Chief Inspector Gary Croft and Prison
> Inspector Linnea Mahlman is biased towards prisoner grievance especially mine.

(*Id.*, pp. 19-20).

Plaintiff further alleges that defendants Prise and Burns, who replaced a Dr. Burke as

"Chief Psychiatrist," have "given orders to take my anti depression medication Effexor and

Welbutrin."  (*Id.*, pp. 21-22).  He also claims that defendants Lehman and Goodman are liable

for their deliberate indifference to his medical needs by blocking his requests in 2013 for transfer

from isolation to a residential treatment unit for suicide watch after he told them "over and over

about isola[]tion hurting my mental health[,] the suicide attempts in past knowledge and me

telling them plans to kill myself."  (*Id.*, pp. 22-23).  Plaintiff states:  "Many employees like C/O

Michael Jenkins tell us to kill ourselves."  (*Id.*, p. 22).  Finally, plaintiff appears to challenge his

transfer from Oakwood Mental Hospital on March 5, 2010 to SOCF's "max security isolation"

and "no mental health treatment" without a hearing, notice or appeal on a disciplinary conduct

report.  (*Id.*, p. 23).  Plaintiff states that the conduct report was withdrawn when he filed a

complaint, but that defendants Cynthia Davis and Dirk Prise have refused to send him back to

the mental hospital and have kept him in isolation without a "hearing or due process."  (*Id.*).  He

claims that as a result, he was denied parole in December 2010 and October 2012 and "someone

waived my security review transfer appeal Aug 2012 without consent."

Fifth, plaintiff alleges a claim of deliberate indifference to his medical needs against

defendant Ahmed, whom plaintiff contends "has denied medical treatment to me and 70% of

the prison d[ue] to budget cuts." (*Id.*, p. 20).  He also claims that defendants Parks, Desmarais, Cadogan and Clagg "conspired to deny treatment by allowing Dr. Ahmed to work here" and by "tell[ing] these doctors to reduce cost take our medication and flat out refuse treatment." (*Id.*). Specifically, plaintiff alleges that Dr. Ahmed has refused to refill plaintiff's prescriptions for "Baclofen pain pills" and "Benadryl for allergies" and "wrote false reports that [plaintiff] refused other medication[s]." (*Id.*, p. 21).  Although Dr. Ahmed prescribed "blood pressure pills" for plaintiff, which plaintiff claims has "damaged [his] blood circulation," Ahmed told plaintiff to buy his own allergy medicine and aspirin from the commissary "to reduce cost for the State." (*Id.*). Plaintiff states that he cannot afford to pay for his own medicine and that as a result of Dr. Ahmed's refusal to refill the pain and allergy medications, his back is "in severe pain" and he "can't breath[e] in sleep" and has "swollen itchy eyes and clogged nasal." (*Id.*). Plaintiff also alleges that when he requested "sick call" for allergies in April 2013, Dr. Ahmed "never even saw me" and a nurse gave him only "5 single allergy packs to last 5 days.  Now allergies back can't breath[e]." (*Id.*).  Plaintiff avers that he wrote the Ohio State Medical Board and received a response from Sue Bigham, who refused to investigate the matter. (*Id.*). Bigham instead sent his complaint to the ODRC to "investigate itself." (*Id.*).  Plaintiff states that Dr. Desmarais "never did nothing," but together with Parks, Clagg and Cadogan said "reduce cost deny treatment." (*Id.*).

Sixth, plaintiff alleges as his final claim that he was denied a fair hearing by the Rules Infraction Board (RIB) in disciplinary proceedings at SOCF in 2013. (*See id.*, pp. 24-28). Plaintiff states that the disciplinary proceedings resulted in the sanction of "[s]ix months in isolation" for fighting with three other inmates in "max security." (*Id.*, p. 27).  The cause of action is brought against defendants Walter Sammons, Larry Greene, Donald Morgan, and

9

Gary Mohr.  (*See id.*, pp. 24-28).

As relief, plaintiff requests $12,000 in nominal damages, $350,000 in compensatory damages and $320,000 in punitive damages.  (*Id.*, p. 34).  He also requests injunctive and declaratory relief in the form of an order to stop "[a]ll biased sham hearings" and that the "Inspector, Chief Inspector, Use of Force Committee, Disciplinary Board and Disciplinary Appeals, Parole Hearing and Investigator" be replaced by "non biased independent people." (*Id*).

Upon review of the complaint, the undersigned concludes that some of plaintiff's claims are deserving of further development and may proceed at this early stage in the proceedings.  *See* 28 U.S.C. § 1915(e)(2)(B).  However, as discussed below, many of the named defendants are subject to dismissal and portions of the complaint should be dismissed for failure to state a claim upon which relief may be granted by this Court.

As a threshold matter, to the extent plaintiff may be asserting various claims on behalf of other inmates at SOCF as well as himself, he "lacks standing to assert the constitutional rights of other prisoners" and is not permitted as a *pro se* litigant to bring a class action lawsuit concerning prison conditions.  *See Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008) (and cases cited therein); *see also White v. Kasich,* No. 2:12cv1125, 2013 WL 941440, at *10 (S.D. Ohio Mar. 8, 2013) (Deavers, M.J.) (Report & Recommendation) (explaining that the reason *pro se* prisoners are generally prohibited from bringing class actions is because they are unable to "adequately to represent the interests of the class"), *adopted*, 2013 WL 1281887 (S.D. Ohio Mar. 27, 2013) (Smith, J.); *Brown v. Collins*, No. 2:07cv826, 2008 WL 818793, at *2 (S.D. Ohio Mar. 24, 2008) (Kemp, M.J.; Frost, J.) (citing *Palasty v. Hawk*, 15 F. App'x 197, 200 (6th Cir. 2001)) (same); *Marcum v. Jones*, No. 1:06cv108, 2006 WL 543714, at *1 (S.D.

Ohio Mar. 3, 2006) (Dlott, J.) (and cases cited therein) (holding that the *pro se* inmate "may bring his own claims to federal court without counsel, but not the claims of others"). Therefore, plaintiff's claims are limited to alleged violations of his own federal rights. *Cf. Dodson*, 304 F. App'x at 438.

In addition, plaintiff has not mentioned the following named defendants in the substance of his complaint:  "C/O Distel" and Brian Felts.  His sole allegation against defendant Michael Jenkins is that Jenkins told plaintiff and other inmates to kill themselves. (*See* Doc. 1, Complaint, p. 22).  That allegation does not give rise to a claim of federal constitutional dimension under 42 U.S.C. § 1983.  *See, e.g., Miller v. Wertanen*, 109 F. App'x 64, 65 (6th Cir. 2004) (citing *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987)) (holding that the district court properly concluded that "verbal harassment" by a prison guard "was not punishment that violated [the prisoner plaintiff's] constitutional rights"); *Johnson v. Moore*, 7 F. App'x 382, 384 (6th Cir. 2001) ("Allegations of verbal harassment and verbal abuse by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. . . .  Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.").  Therefore, "C/O Distel, Brian Felts and Michael Jenkins should be dismissed as defendants in this action on the ground that plaintiff has failed to state a claim upon which relief may be granted against them by this Court.

The undersigned now turns to a review of each of plaintiff's causes of action to determine whether any of those claims or any portion of those claims are subject to dismissal at the screening stage.

### 1. Ban on Music CDs and Erotic Reading Materials

Without the benefit of briefing by the parties, the undersigned concludes that plaintiff may proceed with the cause of action under 42 U.S.C. § 1983 against defendants Judd, Warren, and Lt. Frazie stemming from the ban placed by SOCF's mail room on his receipt of music CDs and erotic magazines and books. *See, e.g., Baker v. Mukasey*, 287 F. App'x 422 (6th Cir. 2008). However, plaintiff's allegations are insufficient to state a § 1983 claim against the other supervisory prison officials plaintiff has named as defendants in that cause of action—i.e., Mahlman, Mohr, Croft, Morgan and Cadogan.

Prison officials whose only roles "involve their denial of administrative grievances and their failure to remedy the alleged [unconstitutional] behavior'" cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). It is well-settled that the doctrine of *respondeat superior* does not apply in § 1983 lawsuits to impute liability onto supervisory personnel. *See, e.g., Wingo v. Tennessee Dep't of Corr.,* 499 F. App'x 453, 455 (6th Cir. 2012) (per curiam) (citing *Polk Cnty. v. Dodson,* 454 U.S. 312, 325 (1981)). "In order to find supervisory personnel liable, a plaintiff must allege that the supervisors were somehow personally involved in the unconstitutional activity of a subordinate, . . . or at least acquiesced in the alleged unconstitutional activity of a subordinate." *Id.* (citing *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982), and *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984)); *see also Colvin v. Caruso,* 605 F.3d 282, 292 (6th Cir. 2010) (quoting *Cardinal v. Metrish*, 564 F.3d 794, 803 (6th Cir. 2009)) (to succeed on claim against supervisory state prison officials, the plaintiff must show the officials "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending officers"). Plaintiff has merely alleged that the "ban on music . . . was authorized by . . . Warden Donald Morgan, . . . Anthony Cadogan . . ., Gary

Croft and Gary C. Mohr."  (Doc. 1, Complaint, p. 8).  That conclusory assertion without any "further factual enhancement" is simply insufficient to state an actionable claim for relief against those supervisory prison officials.  *See Twombly*, 550 U.S. at 555-57.

### 2. Kosher Meals

Only a small portion of plaintiff's cause of action pertaining to the provision of kosher meals at SOCF should be allowed to proceed against defendants Mohr, Jackson, "ODRC Food Service Chief" and "SOCF Food Service Provider."  Plaintiff may proceed with the narrow claim that his First Amendment right to freely exercise his Jewish religion has been violated by those defendants to the extent some of the food, which is served in open containers in accordance with a new cost-saving policy allegedly instituted by defendants Mohr, Jackson and the "ODRC Food Service Chief," is not actually kosher because such food has not been approved by a rabbi.  (*See* Doc. 1, Complaint, pp. 9-10).

However, to the extent that plaintiff challenges the quality of the kosher meals now provided at SOCF, he has failed to state a claim of a violation of his religious rights under the First Amendment.  *See Smith v. Mohr*, No. 12-3241, 2012 WL 10235347, at *1 (6th Cir. Oct. 17, 2012) (in a case where the plaintiff alleged that "he had purchased kosher food from the commissary for over ten years because the kosher meals provided by the prison were 'distasteful,'" the Sixth Circuit affirmed the screening dismissal of the complaint because it was clear from the face of the complaint that the plaintiff "had access to kosher meals" and his "First Amendment rights were not violated simply because these kosher meals were 'distasteful'"). The allegation is also insufficient to state a claim of cruel and unusual punishment under the Eighth Amendment.  *See, e.g., Perdue v. Ohio Dep't of Corr.*, No. 1:13cv878, 2014 WL 661707, at *1, *5-6 (S.D. Ohio Feb. 19, 2014) (Litkovitz, M.J.; Barrett, J.) (and cases cited therein)

(dismissing claim challenging the quality of religious meals provided at SOCF as "substandard" and "inadequate" at the screening stage because plaintiff's allegations did not rise to the level of cruel and unusual punishment under the Eighth Amendment where only loss of weight was alleged as injury to health); *see also Allen v. Aramark Corp.*, Civ. Act. No. 3:07CV-P260-M, 2007 WL 3120088, at *5 (W.D. Ky. Oct. 23, 2007) (and cases cited therein) ("there is no constitutional right that the food provided [in prison] must be tasty or even appetizing").

Furthermore, to the extent that plaintiff also alleges that defendants Mahlman, Croft and Chaplain York may be held liable in this cause of action, plaintiff's allegations are insufficient to state an actionable claim under § 1983.   Plaintiff has alleged no facts even remotely indicating that any of those individuals were involved in instituting changes in policy or the service of kosher meals that failed to satisfy religious requirements.  As discussed above, Mahlman and Croft are not liable under § 1983 merely because they denied his administrative grievance.  *See Shehee,* 199 F.3d at 300.  Moreover, plaintiff's sole factual allegation that Chaplain York referred his complaint about kosher meals to "Food Service" does not suggest any involvement by York in the alleged unconstitutional conduct.

3. **Mace Use**

Although plaintiff appears to be generally complaining about the widespread abuse of the use of mace by prison guards at SOCF, his claim of a violation of his own constitutional rights is based on a single incident that occurred on January 1, 2013 when he was allegedly burned by the use of mace on another inmate in his unit and was not permitted to wash the mace off or to receive immediate medical treatment for the burns.  Plaintiff's cause of action is, therefore, limited to that particular incident.  Plaintiff may proceed with an Eighth Amendment claim against defendants Stone and Azbel stemming from that incident.  However, plaintiff should not

be allowed to proceed with the claim to the extent he also seeks to hold defendants Mohr, Croft, Mahlman, and Kasich liable for Stone's and Azbel's alleged misconduct.  As discussed above, Mahlman and Croft are not liable under § 1983 merely because they denied plaintiff's administrative grievance and Mohr and Kasich are not liable merely because they were aware that mace was being abused in Ohio's prisons and had not remedied "the alleged [unconstitutional] behavior."  *See Shehee,* 199 F.3d at 300.  Absent any factual allegations suggesting that Ohio's governor and the prison supervisory officers were personally involved in or authorized, approved or knowingly acquiesced in the alleged misconduct that occurred on January 1, 2013, plaintiff has failed to state a viable claim under § 1983 against those individuals.  *See Colvin,* 605 F.3d at 292.

### 4.  Mental Health Treatment

In this cause of action, plaintiff essentially complains about his long-term placement in isolation as a substitute for treatment for his mental health issues, which involve depression and suicidal thoughts that have worsened over the course of the over-two-year period he has been in isolation.[1]  This portion of the complaint contains passages that are difficult to follow or comprehend.  However, construing the complaint liberally, it appears that plaintiff is alleging that defendants Burns, Prise, Davis, Ford, Lehman and Goodman have all participated in keeping him locked up in long-term isolation and have failed to provide adequate mental health treatment to him, which constitutes a violation of the Eighth Amendment.  (*See* Doc. 1, Complaint, pp. 16-19, 21-23).  At this juncture, without the benefit of briefing by the parties, plaintiff's Eighth Amendment claim may proceed against those individuals.

---

[1] It is noted that plaintiff also generally complains about the placement of mentally ill inmates in isolation in lieu of mental health treatment, which has resulted in an increase in the number of inmate suicides at SOCF. However, as discussed earlier, because plaintiff has neither requested nor is qualified to bring a class action, the claim is limited to only the alleged violation of plaintiff's constitutional rights.

However, as discussed above, to the extent that plaintiff also alleges defendants Mahlman, Croft, Saul and Kasich are liable for denying his grievances and/or failing to remedy the constitutional violation, he has failed to state a viable § 1983 claim.  *See Shehee,* 199 F.3d at 300.  Moreover, to the extent that plaintiff alleges as a corollary claim that defendants Saul, Croft and Mahlman should be held liable for deficiencies or improprieties in the prison grievance procedure and/or the handling of his grievances (*see* Doc. 1, Complaint, p. 20), he has failed to state a viable claim under § 1983 because he has no federal constitutional right to an effective grievance procedure.  *See, e.g., Hill v. Warden, Southern Ohio Corr. Facility,* No. 1:12cv63, 2012 WL 1639991, at *2 (S.D. Ohio Mar. 13, 2012) (Litkovitz, M.J.), *adopted*, 2012 WL 1623565 (S.D. Ohio May 9, 2012) (Weber, J.); *Dearing v. Mahalma,* No. 1:11cv204, 2011 WL 3739029, at *7 (S.D. Ohio Aug. 24, 2011) (Barrett, J.); *Williams v. Harris,* No. 1:11cv362, 2011 WL 3667438, at *3 (S.D. Ohio June 15, 2011) (Litkovitz, M.J.), *adopted*, 2011 WL 3667389 (S.D. Ohio Aug. 22, 2011) (Dlott, J.); *Marcum v. Jones,* No. 1:06cv108, 2006 WL 543714, at *3 (S.D. Ohio Mar. 3, 2006) (Dlott, J.) (and cases cited therein); *see also Walker v. Michigan Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005) (per curiam) (and cases cited therein); *Argue v. Hofmeyer,* 80 F. App'x 427, 430 (6th Cir. 2003) (and cases cited therein); *Overholt v. Unibase Data Entry, Inc.*, No. 98-3302, 2000 WL 799760, at *3 (6th Cir. June 14, 2000)).

### 5.   Denial of Medical Care

In this cause of action, plaintiff claims that defendant Dr. Fiasal Ahmed has been deliberately indifferent to his serious medical needs by discontinuing his prescriptions for pain and allergy medications and instead requiring plaintiff to purchase those medicines from the prison commissary.  (*See* Doc. 1, Complaint, pp. 20-21).  He also claims that defendants Mona Parks, Dr. John Desmarais, Anthony Cadogan and Rosie Clagg are liable for their role in

implementing the cost-saving medication policy, "allowing Dr. Ahmed to work [at SOCF]," and doing nothing to remedy the problem. (*Id.*). Finally, plaintiff alleges that defendant Sue Bigham is liable for refusing to investigate the matter when he complained to the Ohio State Medical Board. (*Id.*, p. 21).

Plaintiff's allegations fail to state a viable claim for relief under 42 U.S.C. § 1983. First, plaintiff's allegations are insufficient to give rise to a claim of a federal constitutional violation. To state a claim under the Eighth Amendment based on inadequate medical care, plaintiff must allege facts indicating that (1) he had a "serious medical need," which is something "more than 'mere discomfort or inconvenience,'" and (2) the defendants knew of and disregarded an excessive risk to the inmate's health or safety. *Flanory v. Bonn*, 604 F.3d 249, 253-54 (6th Cir. 2010) (quoting *Talal v. White*, 403 F.3d 423, 426 (6th Cir. 2005)). Allegations of medical malpractice or negligent diagnosis or treatment fail to state an Eighth Amendment claim. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976): *see also Flanory*, 604 F.3d at 254 (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)) ("Deliberate indifference 'entails something more than mere negligence.'"). Furthermore, as the Sixth Circuit has explained, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).

Here, even assuming plaintiff's claims of "severe" back pain and allergies are sufficient to show a sufficiently serious medical need, his allegations fall short of showing that defendants have been deliberately indifferent to those needs by discontinuing his pain and allergy medication prescriptions and requiring him to instead purchase those medications from the commissary. *Cf. Trawick v. Bunting*, No. 3:11cv2508, 2012 WL 275097, at *5 (N.D. Ohio Jan.

17

31, 2012) (holding in an analogous case that the plaintiff had failed to allege deliberate indifference to his medical needs by prison medical staff who required him to purchase naproxen at the prison commissary).  It is clear from the face of the complaint that plaintiff was not deprived of pain and allergy medicines, but rather was required to purchase them from the prison commissary rather than by way of physician prescription.  "[A]lthough a prison is required to provide its inmates with adequate medical care, this care does not necessarily have to be free of charge."  *Johnson v. Ahmed*, No. 1:13cv921, 2014 WL 467334, at *1, *3 n.1 (S.D. Ohio Feb. 5, 2014) (Black, J.; Litkovitz, M.J.) (quoting *Hunt v. Mohr*, No. 2:11cv653, 2011 WL 4467764, at *5 (S.D. Ohio Sept. 26, 2011) (Report & Recommendation), *adopted*, 2012 WL 368060 (S.D. Ohio Feb. 3, 2012)); *see also Washington v. Sommerville*, No. 98-5515, 1999 WL 253652, at *2 (6th Cir. Apr. 23, 1999) ("Charging inmates who can pay for medical care does not constitute deliberate indifference or violate due process.")  To the extent that plaintiff has alleged that he has lacked the funds to purchase pain and allergy medicines from the commissary, it also appears clear from the face of the complaint that when he has sought help from the prison's medical staff for those health issues, he was provided with the medicines that he needed free-of-cost.  (*See* Doc. 1, Complaint, p. 21).  Therefore, in the absence of any allegations suggesting that the defendants have been deliberately indifferent to his medical needs, plaintiff has failed to state a viable claim for relief in this cause of action.  *Cf. Trawick v. Bunting*, *supra*, 2012 WL 275097, at *5.

In any event, plaintiff has not stated a § 1983 claim against defendant Sue Bigham, which is based solely on the allegation that Bigham failed to investigate plaintiff's complaint to the Ohio State Medical Board.  *Cf. Wingo*, 499 F. App'x at 455 (claim against supervisory state officials for failure to enforce prison policies and failure to investigate the unprofessional

18

conduct of correctional officers does not state a plausible claim under § 1983 absent allegations that those officials actively participated in the alleged misconduct).  Similarly, plaintiff has not stated a claim under § 1983 against defendants Mona Parks, Dr. John Desmarais, Anthony Cadogan and Rosie Clagg to the extent plaintiff suggests those individuals may be held liable solely on the bases of their supervisory role over Dr. Ahmed and/or their failure to correct the alleged constitutional violation.  *Id.*; *see also Shehee,* 199 F.3d at 300.

6.  **RIB Proceedings**

In his final cause of action against defendants Walter Sammons, Larry Greene, Donald Morgan, and Gary Mohr, plaintiff challenges certain RIB proceedings that resulted in the imposition of a disciplinary sanction of "[s]ix months in isolation" for fighting with three other inmates in "max security."  (*See* Doc. 1, Complaint, pp. 24-28).  Plaintiff's allegations are insufficient to trigger constitutional concerns because the challenged disciplinary actions did not amount to a deprivation of a constitutionally protected liberty interest.

In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court held that the Fourteenth Amendment confers on prisoners only a "limited" liberty interest "to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or which "will inevitably affect the duration of his sentence."  *Sandin*, 515 U.S. at 484, 487; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Williams v. Wilkinson,* 51 F. App'x 553, 556 (6th Cir. 2002).  The Sixth Circuit has held that confinement in segregation generally does not rise to the level of an "atypical and significant" hardship implicating a liberty interest except in "extreme circumstances, such as when the prisoner's complaint alleged that he is subject to an *indefinite* administrative segregation" or that such confinement was excessively long in duration.  *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th

19

Cir. 2010) (citing *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008)) (emphasis in original); *see also Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir.) (holding that the prisoner's 8-year confinement in segregation was of "atypical duration" and thus "created a liberty interest that triggered his right to due process"), *cert. denied*, 133 S.Ct. 429 (2012).  *Cf. Wilkinson v. Austin*, 545 U.S. 209, 223-24 (2005) (ruling that an inmate's transfer to Ohio's "supermax" prison "imposes an atypical and significant hardship" given the combination of extreme isolation of inmates, prohibition of almost all human contact, indefinite duration of assignment, and disqualification for parole consideration of otherwise eligible inmates).

Here, plaintiff has not alleged that the challenged disciplinary proceeding resulted in the lengthening of his prison sentence, the withdrawal of good-time credits, or the deprivation of any necessities of life.  The sanction of six months in isolation is not so lengthy in duration as to rise to the level of an atypical and significant hardship and thus does not trigger due process concerns.  *Cf. Jones*, 155 F.3d at 812 (holding that an inmate's administrative segregation for two and a half years while his participation in a prison riot was being investigated did not amount to an atypical and significant hardship); *Mackey v. Dyke*, 111 F.3d 460, 461, 463 (6th Cir. 1997) (117-day delay in releasing the plaintiff from administrative segregation to the general prison population did not impose an atypical or significant hardship on the plaintiff and thus did not trigger due process concerns); *Bradley v. Evans*, No. 98-5861, 2000 WL 1277229, at *7 (6th Cir. Aug. 23, 2000) (and numerous cases cited therein in support of holding that placement for 14 months in administrative segregation did not impose an atypical or significant hardship on the prisoner); *Collmar v. Wilkinson*, No. 97-4374, 1999 WL 623708, at *3 (6th Cir. Aug. 11, 1999) (30 days in Security Control, 14 days in Disciplinary Control and six to eight months in Administrative Control did not constitute an "atypical hardship" under *Sandin*).

Accordingly, because plaintiff does not have a protected liberty interest under the circumstances alleged herein, his cause of action challenging the disciplinary action taken against him at SOCF in 2013 fails to state a cognizable federal claim.

### IT IS THEREFORE RECOMMENDED THAT:

The following defendants be dismissed from this action because plaintiff has failed to state a claim upon which relief may be granted against them by this Court:  Donald Morgan; Anthony Cadogan; Fiasal Ahmed; Linnea Mahlman; Gary Croft; John Kasich; Michael Jenkins; Joanna Saul; "C/O Distel"; Larry Greene; Walter Sammons; Dr. John Desmarais; Mona Parks; Rosie Clagg; Chaplain York; Sue Bigham; and Brian Felts.  It is further **RECOMMENDED** that the complaint be **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted **except to the extent that** the following limited causes of action under 42 U.S.C. § 1983 may proceed:  (1) plaintiff's claim against defendants Dana Judd, Sara Warren, and Lt. Frazie stemming from the ban allegedly placed by SOCF's mail room on plaintiff's receipt of music CDs and erotic magazines and books; (2) plaintiff's claim against defendants Gary C. Mohr, Wanza Jackson, "ODRC Food Service Chief" and "SOCF Food Service Provider" for allegedly violating his First Amendment right to freely exercise his religion by enacting and implementing a cost-saving policy regarding the provision of kosher meals that has allowed for certain non-kosher food items to be served at SOCF as part of the kosher meal; (3) plaintiff's Eighth Amendment claim against defendants Case Stone and Jason Azbel stemming from an incident that occurred on January 1, 2013 when plaintiff was allegedly burned by the use of mace on another inmate in his unit and was not permitted to wash the mace off or to receive immediate

medical treatment for the burns; and (4) plaintiff's claim against defendants Kathy Burns, Dirk

Prise, Cynthia Davis, Dr. Ford, Ms. Lehman and Bertha Goodman challenging his long-term

placement in isolation as a substitute for treatment for his mental health problems, as well as the

defendants' failure to provide adequate mental health services to him.  *See* 28 U.S.C. §§

1915(e)(2)(B) and 1915A(b).

**IT IS THEREFORE ORDERED THAT:**

1. Within **thirty (30) days** of the date of this Order, plaintiff shall submit to the Court

sixteen (16) copies of the complaint so that the named defendants who remain in the case may

be served with the complaint.  Plaintiff is **FURTHER ORDERED** to submit within that 30-

day period any completed summons and United States Marshal forms for the remaining

defendants that have not yet been submitted to the Court for service purposes.  The Clerk of

Court is hereby **DIRECTED** to provide plaintiff with a copy of his complaint, as well as a

summons and United States Marshal form, so that plaintiff may make the requisite number of

copies of the complaint and summons and marshal forms for completion and submission to the

Court.  Upon receipt of the service copies of the complaint and completed summons and

United States Marshal forms, the Court shall order service of process by the United States

Marshal in this case.  However, plaintiff is hereby **NOTIFIED** that if he fails to comply with

this Order and does not submit within the requisite 30-day period service copies of the

complaint and completed summons and United States Marshal forms for each of the remaining

16 defendants, the complaint shall be dismissed with prejudice for lack of prosecution.

2.  Plaintiff shall serve upon the defendants or, if appearance has been entered by

counsel, upon the defendants' attorney(s), a copy of every further pleading or other document

submitted for consideration by the Court.  Plaintiff shall include with the original paper to be

filed with the Clerk of Court a certificate stating the date a true and correct copy of any

document was mailed to defendants or their counsel.  Any paper received by a district judge or

magistrate judge which has not been filed with the clerk or which fails to include a certificate

of service will be disregarded by the Court.

 3.  Plaintiff shall inform the Court promptly of any changes in his address which may

occur during the pendency of this lawsuit.


      s/Stephanie K. Bowman_____
      Stephanie K. Bowman
      United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

DAVID EASLEY,                                    Case No. 1:14-cv-100
     Plaintiff,

                                     Dlott, J.

     vs                                Bowman, M.J.

DANA JUDD, et al.,
     Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc